

APR 0 4 2013

TONY R. MOORE, CLERK
BY _____
                DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

Knoll, et al                                      Civil Action No. 11-01725

versus                                         Judge Richard T. Haik

Banner Life Insurance Co.              Magistrate Judge C. Michael Hill

### REASONS FOR RULING

This case arises from a Interpleader action filed by Banner Life Insurance Company

pursuant to Fed.R.Civ.P. 22. The Court's jurisdiction is premised on diversity of citizenship

under 28 U.S.C. § 1332.[1]

This matter was tried before the Court as a bench trial which was conducted on March

20, 2013 and March 27, 2013.  Based on the evidence adduced at the trial on the merits, the

Court makes the following findings of fact and conclusions of law pursuant to Federal Rule

of Civil Procedure 52(a).  To the extent any of the following findings of fact comprise

conclusions of law or a mixed finding of fact and law, they shall be considered as such.

*Findings of Fact*

The following facts were stipulated to by the parties at the beginning of trial on March

20, 2013:

1.  Banner Life Insurance Co. ("Banner") issued to Triston K. Knoll ("Knoll") Policy

No.17B644421 (the "Policy") with an Aggregate Face Amount of $600,000.00 and a Policy

---

[1]In a diversity case, Rule 22 interpleader requires: (1) "complete diversity of citizenship, which is
met when the stakeholder is diverse from all the claimants, even if citizenship of the claimants is not
diverse; and (2) an amount-in-controversy that exceeds $75,000 exclusive of interest and costs." *Hussain
v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 631 n. 46 (5th Cir.2002).

Date of 6/20/2003.  B-0003-B-0022.

2. In the Application for insurance, Knoll named as beneficiaries Tina R. Knoll for 33.34%

and Andree N. Knoll for 66.66% of the Death Benefit. B-0011 and B-0014.

3.  Knoll died on April 11, 2011.  B-0085.

4.  Before Knoll's death,  on or about June 30, 2010, Banner received a payment stub for a

premium due on the Policy, signed "Triston K. Knoll 6/19/10," with the following notation

written in a different handwriting from the signature:  "Please change policy to list Adrienne

Theriot ["Theriot"] as beneficiary. Tina Knoll is to receive no benefits whatsoever."  The

premium payment instructed that payment be mailed to P.O. Box 740526, Atlanta, GA

30374-0526 (which was not the address of the administrative office which Banner instructed

that a beneficiary change form be mailed).  B-0099.

5.  Banner sent a follow up letter dated July 23, 2010 to Knoll  enclosing an official Banner

Life Insurance Beneficiary Change Form (Form number LP159) instructing Knoll to "Please

complete and sign the enclosed form so that we may process your request. … Your request

will be processed once we receive the completed form."  B-0050.  The Beneficiary Change

Form instructed the insured to mail the completed and signed form to the administrative

office at 1701 Research Boulevard, Rockville, Maryland 20850.  B-0051.

6.  In an email to Banner's customer service dated April 19, 2010, Jerold Edward "Eddie"

Knoll, Sr. ("Eddie Knoll") requested a copy of the premium pay stub received by Banner on

June 30, 2010 and attached a copy of Banner's July 23, 2010 letter and the Beneficiary

Change Form. B-0076. The copy of the Beneficiary Change Form was signed by Knoll and dated September 12, 2010 and in a handwriting different from Knoll's signature, indicated that the Primary Beneficiary was "Adrienne Theriot ... Biological Mother" and gave her address and Social Security number. B-0023.

7. Banner received the Beneficiary Change dated September 12, 2010, on or about April 22, 2011, approximately 11 days after Knoll's death. Deposition of Jana Knowles at p. 31, ll. 6, 7.

8. Banner sent Knoll a letter dated April 22, 2011 (after his death), which enclosed another Beneficiary Change Form, stated that the form must be completed within three months of receipt, and instructed Knoll to "re-sign and date the form." B-0131.

9. Banner received a letter dated June 6, 2011, from Eddie Knoll, advising Banner that Knoll "executed the Beneficiary Change Form on September 12, 2010, which was immediately mailed back to Banner," and therefore death benefits should be paid to Theriot. B-0073, 0074.

10. Attached to Eddie Knoll's June 6, 2011 letter was a signed and notarized Affidavit from an individual named "Jerry W. Deason, Jr" stating that he is an attorney and that on September 12, 2010 he personally witnessed Knoll execute the Beneficiary Change Form and "he personally deposited same in the United States mail, properly addressed and stamped to Banner Life Insurance Company" (Deason later recanted that he knew the envelope was properly addressed to Banner). B-0075.

3.

11. A Banner internal document titled "Notice Of Death," dated June 6, 2011, indicated the death of Triston K. Knoll was reported by "Jerold Edward Knoll - father/attorney." A notation at the bottom of the document stated "Adrienne Theriot, Biological Mother." B-0071.

12. In a letter dated June 10, 2011, Banner advised Eddie Knoll that "a review of its records showed that Adrienne Theriot was the named primary beneficiary" and that in order to process the claim for life insurance benefits it would need the Claimant's Statement completed by the beneficiary, an original certified copy of the Insured's Death certificate, and return of the original policy or the completed and notarized Lost Policy From which was enclosed. B-0070.

13. In a letter dated June 29, 2011, Eddie Knoll wrote to Banner stating that Jerry W. Deason, Jr. had informed him that, "Triston had not mailed in the Change of Beneficiary Form he had in his possession." Eddie Knoll further advised that Deason had produced to him the payment stub and the Change of Beneficiary Form dated September 1, 2010, and that "all but the signature of [Knoll] and a date of June 19, 2010 [on the payment stub] was written by Mr. Deason" and "[a]ll of the primary beneficiary information listed in the Beneficiary Change Form is likewise believed to have been the writings of Mr. Deason." B-0078 - 0079.

14. On July 5, 2011, Banner received a Proof of Death Claimant's Statement signed by Theriot on June 27, 2011, a certified copy of Knoll's death certificate and the completed and

notarized Lost Policy Form.  B-0083-B-0086.

15. On July 8, 2011, Banner received a letter from Tina R. Knoll, asking for the "necessary forms" to fill out to "secure the life insurance benefits" of Knoll and stating that, "It is my belief that his life insurance he had with you was left ½ to me, and ½ to our daughter, Andree N. Knoll."  B-0088.

16. Banner forwarded claim form documents to Tina R. Knoll's attorney on July 13, 2011. B-0089.

17. In a letter dated July 13, 2011, Banner advised Tina R. Knoll's attorney that there was an additional claim for the life insurance proceeds and, in the event all parties making claims on the policy proceeds were unable to agree on the distribution of the funds, Banner would deposit the Policy proceeds with the court and file an interpleader action.  B-0089.

18. On July 28, 2011, Banner sent a letter to an attorney representing Theriot stating that it had received correspondence from Tina Knoll indicating she intended to make a claim for the proceeds of Knoll's life insurance policy, and in the event the parties were unable to reach an agreement on the distribution of funds, Banner would file a complaint for interpleader. B-0097.

19. Banner never made an internal notation indicating that the beneficiaries had been changed prior to the death of Knoll.

20. Banner never sent Knoll a "Confirmation Letter", apprising him that a beneficiary change had taken place as required by Banner's Processing Manual.  B 0156, 00161.

5.

21. Banner's website continued to list the beneficiaries as ANDREE N. KNOLL and TINA R. KNOLL in the months following Knoll's death, as indicated by the computer printouts dated April 19, 2011 (Knoll Exhibit 1), June 27, 2011 (Knoll Exhibit 2), July 7, 2011 (Knoll Exhibit 3) and August 26, 2011 (Knoll Exhibit 4).

22. Banner's representative, Jana Knowles, testified that upon receipt of the premium due payment stub, Banner's "administrative system" was never updated to reflect that a beneficiary change had occurred. Deposition of Jana Knowles. B -3, pp. 56-57, 59-60.

23. Tina R. Knoll, individually and on behalf of her minor child, Andree N. Knoll, filed this action against Banner on August 31, 2011 in the 12th Judicial District Court for the Parish of Avoyelles, State of Louisiana seeking recovery under the Banner Policy issued to Triston K. Knoll. R. 1.

24. On September 27, 2011, Banner filed a Notice of Removal, removing this action to this Court and asserting jurisdiction pursuant to 28 U.S.C. § 1332.

25. On October 5, 2011, Banner filed a Counterclaim for Interpleader pursuant to Federal Rule of Civil Procedure 22, naming as defendants in Counterclaim, Tina R. Knoll, individually and on behalf of her minor daughter, Andree N. Knoll, and Adrienne Theriot.

26. On October 12, 2011, Banner deposited into the registry of the Court a check in the amount of $604,069.47, representing the sum of $600,000.00 in death benefits plus post mortem interest through October 13, 2011 of $3,949.50 and a premium refund of $119.97. Rec. Doc. 8.

Pursuant to Federal Rule of Civil Procedure 52(a) the Court makes the following

6.

findings of fact:

1. Jana Knowles, Banner's Senior Claims Examiner and 30(b)(6) representative, stated in her July 23, 2012 deposition that the payment stub dated 6/19/10, B.0099, constituted a valid change of beneficiary to Adrienne Theriot even though the payment stub stated nothing about Andree N. Knoll or her designation as a 66.6% beneficiary, and Banner had no information about Theriot. Deposition of Jana Knowles, pp. 35, 57, 62.

2. Jana Knowles stated that Banner's customer service department send a Beneficiary Change Form to Triston Knoll on July 23, 2010 because they "like to have more information on our beneficiaries," but that the Form didn't negate the change that was made. Deposition of Jana Knowles, p. 49.

3. Jana Knowles stated that Banner never updated their system to reflect Theriot as the sole beneficiary because they never received the Beneficiary Change Form before Knoll's death, but that "doesn't make it wrong [that Banner had changed the beneficiary]." Deposition of Jana Knowles, pp. 51, 56.

4. Jana Knowles stated that on the date of Knoll's death, Banner's administrative system listed the beneficiaries as Tina Knoll and Andree Knoll. Deposition of Jana Knowles, pp. 59-60.

5. Jana Knowles stated that if Knoll had called Banner prior to his death and asked who his beneficiaries were she didn't "have any idea what a customer service representative might had told [him]." Deposition of Jana Knowles, p. 61.

6. Jana Knowles stated that Banner first received the Beneficiary Change Form on April 22,

7.

2011 but there was nothing attached to it indicating how it was received (on April 22, 2011 Banner sent Knoll another Beneficiary Change Form instructing him to "re-sign and date the form" as it must be received with 3 months of his signature. B-0131). Deposition of Jana Knowles, p. 54.

7. Eddie Knoll testified that Triston K. Knoll was the biological child of his wife, Jeanette Knoll's, sister, Adrienne Theriot, and that he and his wife adopted him when he was 19 months old.

8. Eddie Knoll testified that he had been practicing law for almost 50 years during which time he served as the District Attorney of Avoyelles Parish from the age of 23 until he retired in 2003, and that Knoll practiced with him at the Knoll Law Firm as an attorney at law for approximately 12 years.

9. Eddie Knoll testified that Jerry W. Deason, Jr. told him about the Banner Life Insurance Policy issued to Knoll.

10. Eddie Knoll testified that, because he was Knoll's father and the executor of his estate, when he first contacted Banner about the Policy he wanted to make certain that his son's exact wishes would be acknowledged and respected.

11. Eddie Knoll testified that Deason initially told him that Knoll never mailed the Banner Beneficiary Change Form but that while Knoll was reviewing his Policy renewal a notation to remove Tina Knoll as beneficiary and add Theriot was made.

12. Eddie Knoll testified that later, on June 6, 2011, Deason told him later that he personally, had mailed the Beneficiary Change Form for Knoll.

13. Eddie Knoll testified that he required Jerry Deason to sign a sworn affidavit that he had mailed the Beneficiary Change Form to Banner.

14. Eddie Knoll testified that because of Deason's conflicting statement as to whether or not the Beneficiary Change Form was mailed, he had Deason raise his hand and attest under oath, as a lawyer and officer of the court, that he had observed Knoll sign the Beneficiary Change Form and that he was the one who mailed it in.

15. Eddie Knoll testified that he assisted Adrienne Theriot in filing out the Banner claim forms, as a courtesy to Theriot because he believed that Deason had mailed the Beneficiary Claim Form in question and Theriot was the beneficiary.

16. Eddie Knoll testified that during a family gathering, the day before he mailed the letter to Banner dated June 29, 2011, he learned that the Beneficiary Change Form had not been mailed by Deason (Eddie Knoll stated in his June 29, 2011 letter to Banner that his son and daughter-in-law, Edmond and Laura Knoll, advised him that Deason told them he had not mailed the form).

17. Eddie Knoll testified that Deason asked his daughter-in-law to research the issue of whether or not the receipt of a change of beneficiary after death was valid.

18. Eddie Knoll testified that after he was told that Deason had not mailed the form he felt like he had been "duped" and that he had an obligation to tell Tina N. Knoll that she and Andree may be claimants to Knoll's life insurance policy proceeds.

19. Based on the Court's evaluation of Eddie Knoll's testimony and his demeanor, the Court finds it was obvious that Eddie Knoll was honest, told the truth in answering the questions

and was an extremely credible witness, and his only desire in the actions he took was to fulfill his son's wishes.

20. Tina N. Knoll testified that while she was married to Knoll he was very meticulous when he paid a bill in that he always wrote the date, the check number and "paid" on the check stub which he also signed.

21. Jerry W. Deason, Jr. testified that he was an attorney at law and had been a member of the Louisiana State Bar Association for 23 years.

22. Deason testified that Knoll was married to Tina N. Knoll when they met and that when Knoll filed for divorce from Tina Knoll he and Knoll were the "closest of friends."

23. Deason testified that Knoll moved into his home from approximately February, 2010 to June, 2010, and thereafter Deason mostly lived in Knoll's apartment in New Orleans until approximately December 31, 2010.

24. Deason testified that some days he filled out checks for Knoll.

25. Deason testified that the signature on check number 1293 dated June 10, 2010 (Exh. Knoll 5), the payment stub (B-0099) and the Beneficiary Change Form dated September 12, 2010 (B-0051) was that of Knoll but that he wrote on all of the documents that Adrienne Theriot was the beneficiary and he filled out the Beneficiary Change Form with her information.

26. Deason initially testified that he received the Beneficiary Change Form at Knoll's apartment in New Orleans, however after he was shown that the Form was mailed to Knoll's post office box in Marksville, he stated that he picked up the mail when he would go back

to Alexandria and then stated that Knoll "got it faxed – emailed to him."

27. Deason testified that at the time he filled out the Beneficiary Change Form, he also paid six or seven bills for Knoll, but he could not remember any, other than the Banner Beneficiary Change Form, in particular.

28. Deason testified that he mailed the Banner Beneficiary Change Form dated September 12, 2010, at a post office box on Loyola Avenue in New Orleans, but he did not address the envelope nor did he know the address to which it was mailed.

29. Deason initially testified that he had seen the Policy before Knoll died and knew the beneficiaries were 66.6 % to Andree and 33.3% to Tina (even though Tina Knoll did not know that information), then after additional questioning about the report to Banner of a "lost policy," he stated that he did not see the Policy until after Knoll died but didn't know where it was and when Knoll died "the statement on it said Tina Knoll. It did not list the child, Andree."

30. Deason testified that he did not recall "one way or the other" whether he raised his hand and took a sworn oath in Eddie Knoll's office - only that he signed "a document."

31. Deason testified that he has no evidence that Banner ever received the Beneficiary Change Form.

32. Deason testified that Knoll never received a Confirmation Letter from Banner.

33. Deason testified that neither he nor Knoll ever followed through with Banner or made any contact with Banner regarding the Beneficiary Change Form.

34. Deason testified that Tina Knoll was "indifferent" to him / "she doesn't exist" and she

11.

deserved none of the life insurance proceeds.

35. Deason testified that he and Theriot were friends.

36. Deason testified that Knoll began a relationship with Theriot after his divorce.

37. Deason testified that he never told Eddie Knoll nor anyone at Knoll's office that he did not put the Change of Beneficiary Form in the mail.

38. Deason testified that he never asked Edmond Knoll or Laura Knoll to research the legitimacy of a change of beneficiary made after the death of the insured.

39. Despite Deason's testimony that he has been a practicing attorney for 23 years, during his trial testimony he repeatedly disregarded the Court's instructions to stop speaking when an attorney was stating an objection and to answer only the question posed to him without providing extraneous testimony.

40. The Court does not believe Deason's testimony and finds it incredible that Knoll, a practicing attorney for 12 years, thought he could merely sign a payment stub in order to remove his daughter and her mother as beneficiaries of his life insurance policy worth $600,000, or that if he had intended to change the beneficiaries by any method, he would not have followed through with Banner to confirm such a change.

41. Based on the Court's evaluation of Jerry Deason's testimony as well as the Court's impression of his demeanor and lack of respect to the Court and the proceedings, the Court finds that Deason's testimony was not truthful and that he was not a credible witness.

At the conclusion of the defendant's case on March 20, 2013, based on the conflicting testimony, the Court ordered that plaintiff produce Edmond Knoll and Laura Knoll to testify

at the trial of this matter, pursuant to Federal Rule of Evidence 614(a), on March 27, 2013.

42. Edmond Humphries Knoll ("Edmond Knoll") testified that he was the brother of Knoll and worked with him as an attorney at the Knoll law firm.

43. Edmond Knoll testified that Deason came to the Knoll law office on the Monday morning after Knoll's funeral on Thursday and told him that Knoll had a life insurance policy.

44. Edmond Knoll testified that Deason showed him the Change of Beneficiary Form and told him that he had not mailed the Form.

45. Edmond Knoll testified that Deason asked Laura Knoll in his presence to research what would happen if the Change of Beneficiary Form was not mailed in before Knoll's death.

46. Edmond Knoll testified that he spoke with his mother about his conversation with Deason the day before Eddie Knoll mailed the June 29, 2011 letter to Banner.

47. Edmond Knoll testified that he spoke with his father, Eddie Knoll, about his conversation with Deason and the Beneficiary Change Form the day Eddie Knoll mailed the letter to Banner.

48. Edmond Knoll testified that he and his wife, Laura Knoll, Theriot and Deason were present at his parents' home when Theriot said, "Ya'll can't let Tina get that money."

49. Edmond Knoll testified that in response to his statement that Knoll was a lawyer, Deason stated, "we have to do what we have to do," which he understood pertained to the Beneficiary Change Form.

50. Laura Bishop Knoll ("Laura Knoll") testified that she worked as an attorney at the Knoll

law firm, was the sister-in-law of Knoll and had not met  Deason before Knoll's funeral.

51. Laura Knoll testified that she and her husband, Edmond Knoll, had a conversation with Deason at the Knoll law firm the Monday after Knoll's funeral.

52. Laura Knoll testified that Deason appeared "with papers," told them that Knoll had a life insurance policy, showed them a Beneficiary Change Form, which she believed was the original, and stated that "this form was never mailed in."

53. Laura Knoll testified that Deason asked her to do research on the Beneficiary Change Form, which she did within a hour.

54. Based on the Court's evaluation of the testimony of Edmond Knoll and Laura Knoll, the Court finds that they were credible witnesses.

55. Based on the testimony of Eddie Knoll, Jerry Deason, Edmond Knoll and Laura Knoll, it is very obvious to the Court that Jerry Deason had an agenda to prevent Tina Knoll from receiving the life insurance proceeds of Triston Knoll and that he attempted to accomplish his goal by providing false information related to the Beneficiary Change Form, which he admittedly created.

56. Based on the evidence before the Court, Deason is the only witness who testified that the Beneficiary Change Form was completed and mailed to Banner.  Contrary to his sworn testimony and his sworn affidavit, all of the parties have stipulated that Banner never received the Beneficiary Change Form before Triston Knoll's death, and three witnesses, all of whom are practicing attorneys and officers of the Court, testified under oath that Deason stated that the Beneficiary Change Form was never sent to Banner.  The Court is convinced

beyond any doubt that Deason lied under oath and has a possible perjury issue.

### Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52(a) the Court makes the following conclusions of law:

1. Louisiana law "require[s] strict compliance with the terms of the insurance contract to effect a change of beneficiary." *American General Life Ins. Co. v. Fine*, 944 F.2d 232, 234 (5th Cir. 1991) (Wisdom, J.); *New York Life Ins. Co. v. Deshotel*, 1995 WL 555584, 2 (E.D.La.,1995); *see Morein v. North American Co. for Life and Health Ins.*, 271 So.2d 308, 314 (La. App. 3d Cir. 1972) ("[A] change of beneficiary in a life insurance policy ordinarily will not be effective unless there has been a strict compliance with the policy requirements as to such change.").

2. "In determining the beneficiary of a life insurance policy, it is necessary to ascertain the intention of the deceased. In this regard, the courts are bound to give legal effect to all contracts and their terms, including insurance policies, according to the true intent of the parties, and the intent is to be determined by the words of the contract when they are clear and explicit and lead to no absurd consequences." *Commercial Life Ins. Co. v. Robinson*, 662 So.2d 486, 488 (La.App. 5 Cir.,1995) (citing *Baker v. Life General Security Insurance Company*, 405 So.2d 1162 (La.App. 1 Cir.1981)).

3. Intent to change a beneficiary was not shown where the insured did complete and sign the change-of-beneficiary forms sent by insurers, but did not date or return them to the insurers prior to his death, and one insurer's letter notified him that change of beneficiaries had not

been processed. *Commercial Life Ins. Co. v. Robinson*, 662 So. 2d 486 (La. App. 5 Cir.,

1995), *see also*, *Morein v. North Am. Co. for Life & Health Ins.*, 271 So.2d 308, 316

(La.App. 3 Cir., 1973)(The insured had no intent before his death to remove his ex-spouse

from his life insurance policy where he never complied with the insurer's instructions to

complete the Change of Beneficiary form).

4.  When the validity of a change of beneficiary form is disputed, the party asserting a claim

under the form has the burden of proving its validity. *American General Life Ins. Co.*, 944

F.2d at 235 ("In any lawsuit in which the validity of a change of beneficiary form is disputed,

the burden of proving that the form is valid rests upon the party whose claim arises under that

form.").

5.  Theriot has the burden of proving that the premium due payment stub and/or the

September 12, 2010 Beneficiary Change Form were valid and effective in changing the

beneficiary on Knoll's Policy. *Id.*

6.  "The testimony of a single witness may be sufficient to prove any fact, even if a greater

number of witnesses may have testified to the contrary, if after considering all the other

evidence [the trier of fact] believe[s] that single witness." *Fifth Circuit Pattern Jury

Instructions, 2.18. Consideration of the Evidence* (2009).

7.  "'In an action tried on the facts without a jury . . . . Findings of fact, whether based on oral

or other evidence, must not be set aside unless clearly erroneous'; . . . 'the reviewing court

must give due regard to the trial court's opportunity to judge the witnesses' credibility.'

Fed.R.Civ.P. 52(a)(6)." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 376

(5th Cir. 2012).

8. "'Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.' *Anderson v. City of Bessemer*, 470 U.S. 564, 572 (1985). 'Embodied in this standard is significant deference to the district court. This deference is even greater when the factual findings are 'based on the credibility of witnesses.' *Tokio Marine & Fire Ins. Co. v. FLORA MV*, 235 F.3d 963, 970 (5th Cir.2001) (citing Fed.R.Civ.P. 52(a))." *Ledet v. Smith Marine Towing Corp.*, 455 Fed.Appx. 417, 421 (5th Cir. 2011).

9. The Banner Policy provision with regard to Change in Beneficiary states in pertinent part "During the insured's lifetime, the owner may change the beneficiary designation unless he or she has waived the right to do so. No beneficiary change will take effect until a written notice is received at our administrative office. Such changes will become effective on the date written notice is received by us." (Trial Exhibit 1; B-0008a).

10. Banner's Beneficiary Change Form requests  information about the new beneficiary which Banner needs prior to effecting any beneficiary change.  Specifically, the social security number, address, relationship to the insured, and the total percentage (to add up to 100 percent) is required and states that it must be submitted to Banner's administrative office, 1701 Research Blvd, Rockville, MD 20880.

11. Banner's Claims Department Administrative Procedural Guide states that the file must be reviewed for, *inter alia*, "Any changes to reflect a new beneficiary including amendments" and "for possible red flags" including "Forgery by someone other than the applicant and/or applicant unable to be physically resent" and "The handwriting is similar

17.

on all documents." B-0137, B-0142.

12. Banner's Processing Manuel states that the beneficiary change form must be signed within three months prior to Banner's receipt of the form: "[beneficiary change] Forms will be rejected if they were signed more than three months prior [to Banner's receipt of the Form]", "If the beneficiary change request is received within three months of issue, the request is processed as per normal operating procedures...", "We cannot accept beneficiary change requests older than three months", and "Review that dates are current, we cannot accept beneficiary change requests older than three months." B-0154, 0155, 0159, 0164.

13. Banner's Processing Manuel states, "No beneficiary change will take effect until a written notice is received at our administrative office." B-0159.

14. Banner's Processing Manuel states, "We will send you a confirmation letter once it has been completed." B-0156.

15. Banner's Processing Manuel states, "Beneficiary designations should be clear so that there is no question as to the intent of the owner" and "The reason that we ask for percentages as opposed to dollar amounts is that the value of the policy may not be the same as of the date of the insured's death." B-0157.

16. The contents of the premium due payment stub cannot be construed to be sufficient written notice to change the beneficiaries for the following reasons: (1) Knoll did not send the payment stub to Banner's administrative office in Rockville, Maryland; (2) The payment stub did not include Theriot's social security number, address or relationship to the insured; (3) The payment stub did not it indicate the percentage allocated to Theriot; (4) The payment

stub did not mention the beneficiary, Andree Knoll; and (5) The payment stub was written in a handwriting different from the signature of Knoll.

17. Banner's Claims Department did not regard the payment stub to be sufficient written notice to change the beneficiary designations based on the following: (1) Banner's July 23, 2010 letter to Knoll, enclosing a Banner Beneficiary Change Form, requested that Knoll complete the form and stated, " your request will be processed once we receive the completed form;" (2) Banner did not make any internal policy notation indicating that the beneficiary designations were changed following receipt of the payment stub; (3) Banner did not send Knoll, their insured, a confirmation letter to notify him of any change in the beneficiaries; (4) Banner's policy log is devoid of any indication that the beneficiaries were changed due to its receipt of the payment stub; (5) Banner's 30(b)(6) deponent, Jana Knowles, senior claims examiner, acknowledged that Banner's administrative system was never updated to indicate that a beneficiary change had taken place; (6) On April 22, 2011Banner sent Knoll (after he was deceased) a Beneficiary Change Form and stated that the form must be completed within three months of receipt, and instructed Knoll to "re-sign and date the form.

18. Banner's internal policies prevented Banner from accepting or confirming the September 12, 2010 Beneficiary Change Form based on the following: (1) Knoll never sent the Beneficiary Change Form to Banner's Administrative Office; (2) The Beneficiary Change Form was filled out in a handwriting different from Knoll's signature; (3) Banner never received the completed Beneficiary Change Form prior to the death of Knoll; and (4) Banner's April 22, 2011 request that Knoll re-sign and date the Beneficiary Change Form

19.

because it must be signed within three (3) months of receipt, was after Knoll's death.

19. The June 6, 2011 letter Eddie Knoll faxed to Banner on that date contained a false affidavit signed by Jerry W. Deason, Jr., which Eddie Knoll had disclosed to Banner in a letter faxed on June 29, 2011. B-0078-79.

20. The handwriting on the payment stub, excluding Knoll's signature and date, as well as all of the primary beneficiary information written on the September 12, 2010 Beneficiary Change Form was made by Jerry W. Deason, Jr., which Eddie Knoll had disclosed to Banner in a letter faxed on June 29, 2011. B-0078-79.

21. Knoll did not change the beneficiaries in the Banner Policy from Tina R. Knoll and Andree N. Knoll to Adrienne Theriot by either the June 19, 2010 premium due payment stub or the September 12, 2010 Beneficiary Change Form.

22. The Court will not assume that Knoll intended to exclude his only child, Andree N. Knoll, as a beneficiary of his life insurance policy for the sake of his biological mother, Theriot, with whom he had no relationship for almost 40 years before his death.

23. La. R.S. 22:1811 states:

> All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.

24. Banner did not settle with the beneficiaries, Tina R. Knoll and Andree N. Knoll, within sixty days after the date of receipt of due proof of death on July 5, 2011, in violation of La. R.S. 22:1811.

*Conclusion*

Based on the Court's findings of fact and conclusions of law, the Court finds that Adrienne Theriot has failed to meet her burden of proving that the premium due payment stub and/or the September 12, 2010 Beneficiary Change Form were valid and effective in changing the beneficiary on Knoll's Policy.  Accordingly, judgment will be entered in favor of Tina R. Knoll, individually and on behalf of her minor daughter, Andree N. Knoll.  The Court further finds that plaintiff in interpleader, Banner Life Insurance Company, violated La. R.S. 22:1811, and is liable to Tina R. Knoll, individually and on behalf of her minor daughter, Andree N. Knoll, for $600,119.97 plus interest in the amount of $12,658.79 for a total sum of Six Hundred Twelve Thousand, Seven Hundred Seventy-eight and 76/100 Dollars, $612,778.76.

Richard T. Haik
United States District Judge

21.